STATE OF NORTH CAROLINA v. JOHN WALL, JR.

No. 22

(Filed 12 January 1982)

1. **Homicide §§ 4.2, 21.6— felony-murder rule—doctrine of merger—felony of discharging firearm into occupied property**

     The Supreme Court will not adopt the merger doctrine which would bar a defendant's conviction of first degree felony murder based upon a felony which is an integral part of the homicide and is an offense included in fact within the offense charged. Therefore, defendant's conviction of first degree felony murder could properly be based upon the underlying felony of discharging a firearm into an occupied vehicle in violation of G.S. 14-34.1.

2. **Homicide §§ 4.2, 14.2; Constitutional Law § 28— felony-murder statute—constitutionality**

     The felony-murder rule set forth in G.S. 14-17 does not establish a presumption of premeditation and deliberation in violation of due process and equal protection since premeditation and deliberation are not elements of the crime of felony-murder and the statute involves no presumption at all.

3. **Homicide § 4.2— felony-murder rule—discharging firearm into occupied property as underlying felony—intent of legislature**

     The 1977 revision of G.S. 14-17 makes it clear that the legislature intended that the discharging of a firearm into occupied property be included as an underlying felony for the purposes of the felony-murder rule.

4. **Arrest and Bail § 1; Homicide § 23— misdemeanor larceny—right to detain thief—firing into fleeing automobile—no justification or excuse**

     The defendant in a felony-murder prosecution was not entitled to an instruction on justification or excuse based upon the statute setting forth when a private person may detain another who has committed a crime in his presence, G.S. 15A-404, where the evidence showed that the victim and another took two six packs of beer from the store in which defendant was working without paying for them, and that defendant fired a pistol into the vehicle occupied by the victim as the vehicle was exiting the store parking lot, since (1) defendant could no longer "detain" the victim once the victim was beyond defendant's control, and (2) neither an officer nor a private citizen could employ deadly force to detain a fleeing misdemeanant. G.S. 15-401(d).

State v. Wall

5. **Constitutional Law § 80; Criminal Law § 138.2— life sentence for felony-murder—no cruel and unusual punishment**

    A sentence of life imprisonment for a felony-murder did not constitute cruel and unusual punishment.

6. **Homicide § 25; Weapons and Firearms § 3— discharging weapon into occupied vehicle—felony-murder—instructions on defendant's contentions**

    In a prosecution for felony-murder by discharging a firearm into an occupied vehicle, the trial court's instructions adequately presented to the jury the essential and substantial features of defendant's contention that he did not intentionally shoot into the vehicle. Furthermore, the trial court was not required to charge on defendant's contention that he fired "at" rather than "into" the vehicle, since defendant could not have intentionally fired a shot "at" the vehicle without intending that the bullet go "into" the vehicle.

7. **Criminal Law § 128.2— statement admitted for impeachment—prosecutor's substantive use in jury argument—denial of mistrial not abuse of discretion**

    In a prosecution for felony-murder by firing a pistol into a vehicle occupied by two teenagers who had stolen two six packs of beer from the store in which defendant worked, the prosecutor's substantive use in his jury argument of defendant's statement that he started to let the teenagers leave but then said, "The hell with it," when the statement had been admitted for impeachment purposes only, was not so prejudicial to defendant in light of the overwhelming evidence on the issue of intent as to render the denial of his motion for mistrial a manifest abuse of the trial court's discretion.

8. **Homicide §§ 30.2, 32.1— guilt of felony-murder—failure to instruct on voluntary manslaughter—absence of prejudice**

    Defendant in a first degree murder trial was not prejudiced by the failure of the trial court to charge on voluntary manslaughter where defendant was found guilty of first degree murder on the theory of felony-murder and was found not guilty on the charge of first degree murder with premeditation and deliberation.

9. **Homicide § 20.1— admissibility of photographs**

    In a prosecution for felony-murder by firing a pistol into an occupied vehicle, photographs of the victim's injuries were properly authenticated and admitted into evidence for illustrative purposes. Furthermore, testimony by the victim's father identifying the photographs as depicting his son and the automobile his son was driving on the night he was killed was relevant to establish the identity of the victim and to identify the automobile.

10. **Criminal Law § 128.2— extended jury deliberations—failure to declare mistrial—no abuse of discretion**

    The trial court did not abuse its discretion in failing to declare a mistrial on its own motion when the jurors had failed to reach a verdict after four and a half hours where the trial judge brought them back into the courtroom to inquire into their numerical differences; at that time the vote stood at eight to four; the foreman gave no indication that the jury was deadlocked, and the judge asked the jury to continue deliberations; a little over an hour later the

State v. Wall

judge again called the jury back into the courtroom and learned that the vote was eleven to one at that point; the foreman informed the judge that further deliberations would result in a unanimous verdict; the jury returned to its deliberations and returned a verdict of guilty a half hour later; and the jury deliberated a total of six hours and ten minutes. G.S. 15A-1063(2).

Justice COPELAND dissenting.

Justices HUSKINS and EXUM join in the dissenting opinion.

APPEAL by defendant from *Griffin, J.,* 17 November 1980 Session of MECKLENBURG Superior Court.

Defendant was charged by bill of indictment, proper in form, with the murder of Steven Shawn Smith.

On the evening of 14 July 1980, the defendant, John Wall, Jr., was working as a cashier at "Mr. T's," a convenience store on Monroe Road in Charlotte. A teenaged girl entered the store and walked out with two six packs of beer. As she was leaving, defendant said he her, "Ma'am you cannot go out the door without paying for the beer." The girl took the beer to a Volkswagen automobile in the parking lot and then returned to the store, this time accompanied by Steven Shawn Smith. Defendant said, "Ma'am, I have to have the money for the beer," to which the girl replied, "Okay. I will go get your money." She then left the store followed by Smith. The two got into the car and began to drive off. As the car was leaving the parking lot, defendant ran out with a .357 magnum pistol and fired three shots. The first shot apparently missed the vehicle. The latter two shots appeared to strike the automobile. The vehicle lurched, and the engine raced as the vehicle slowly rolled to a stop on a side street. Steven Shawn Smith was found slumped over the steering wheel with a fatal head wound.

At trial the State presented testimony by eyewitnesses that defendant shot directly at the fleeing automobile. Defendant testified that he fired all three shots up into the air in an attempt to frighten the fleeing beer thieves into stopping.

Defendant was convicted of first-degree murder and sentenced to life imprisonment. He appealed as a matter of right to this Court pursuant to G.S. 7A-27(a).

*Rufus L. Edmisten, Attorney General, by Joan H. Byers, Assistant Attorney General, for the State.*

*McConnell, Howard, Pruett & Toth, by Carl W. Howard and Rodney Shelton Toth, for defendant appellant.*

BRANCH, Chief Justice.

First-degree murder is defined by statute as follows:

A murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate, and premeditated killing, or which shall be committed in the perpetration or attempted perpetration of any arson, rape, or a sex offense, robbery, kidnapping, burglary, *or other felony committed or attempted with the use of a deadly weapon,* shall be deemed to be murder in the first degree, and any person who commits such murder shall be punished with death or imprisonment in the state's prison for life as the court shall determine pursuant to G.S. 15A-2000.

G.S. 14-17. (Emphasis added.) Defendant's conviction was pursuant to the felony-murder portion of the above statute and was based upon the emphasized language.

[1] Defendant argues that this Court should adopt the merger doctrine espoused in *People v. Ireland,* 70 Cal. 2d 522, 450 P. 2d 580, 75 Cal. Rptr. 188 (1969), which would bar his conviction of first-degree felony murder based upon the underlying felony of discharging a firearm into an occupied vehicle. The *Ireland* case held that in California "a . . . felony-murder instruction may not properly be given when it is based upon a felony which is an integral part of the homicide and which the evidence produced by the prosecution shows to be an offense included *in fact* within the offense charged." (Emphasis in original.) *Id.* at 539, 450 P. 2d at 590, 75 Cal. Rptr. at 198. The felony of discharging a firearm into occupied property, G.S. 14-34.1, appears to be such an integral part of the homicide in instant case as to bar a felony-murder conviction under the California merger doctrine. This Court, however, has expressly upheld convictions for first-degree felony murder based on the underlying felony of discharging a firearm into occupied property. *State v. Swift,* 290 N.C. 383, 226 S.E. 2d

652 (1976); *State v. Williams,* 284 N.C. 67, 199 S.E. 2d 409 (1973); *State v. Capps,* 134 N.C. 622, 46 S.E. 730 (1904). We elect to follow our own valid precedents.

[2]  Defendant maintains that considerations of due process and equal protection of the law prohibit his conviction of first-degree murder based on anything less than a finding of premeditation and deliberation. Defendant relies on the case of *Mullaney v. Wilbur,* 421 U.S. 684, 44 L.Ed. 2d 508, 95 S.Ct. 1881 (1975), which prohibits the conclusive presumption of any element of a criminal offense. We met this identical contention in a case involving firing into an occupied building, *State v. Swift, supra,* wherein we stated:

> We do not believe that *Mullaney* applies to this situation because G.S. 14-17 is a rule of law and not a presumption. If G.S. 14-17 is compared with murder in the first degree based on premeditation and deliberation, it might be said that the practical effect of G.S. 14-17 is that premeditation and deliberation are presumed when a murder is committed in the perpetration of a felony described under G.S. 14-17. *State v. Doss,* 279 N.C. 413, 183 S.E. 2d 671 (1971). However, G.S. 14-17 actually involves no presumption at all. Under G.S. 14-17 premeditation and deliberation are not elements of the crime of felony-murder. Thus, the contention of defendant that the act of firing a firearm into an occupied dwelling has no rational connection with premeditation and deliberation is without merit. The only requirement for purposes of G.S. 14-17 is that the felony involved be one of the specified felonies or an unspecified felony within the purview of G.S. 14-17. We have held in *State v. Williams, supra,* that G.S. 14-34.1 is such a felony because of the reasonable correlation between committing a crime under G.S. 14-34.1 and the possibility of death occurring.

> It is a well established rule that when the law and evidence justify the use of the felony-murder rule, then the State is not required to prove premeditation and deliberation, and neither is the court required to submit to the jury second-degree murder or manslaughter unless there is evidence to support it. *State v. Doss,* 279 N.C. 413, 183 S.E. 2d 671 (1971). Justice Parker (later Chief Justice), speaking

for our Court said in *State v. Maynard,* 247 N.C. 462, 469, 101 S.E. 2d 340, 345 (1958):

> "Where a murder is committed in the perpetration or an attempt to perpetrate a robbery from the person, G.S. 14-17 pronounces it murder in the first degree, irrespective of premeditation or deliberation or malice aforethought. [Citations omitted.]"

*Id.* at 407-08, 226 S.E. 2d at 668-69.

Based upon the holding and rationale of *State v. Swift, supra,* we reject defendant's contentions that our felony-murder statute violates his constitutional rights of due process and equal protection.

[3] Defendant futher contends that the legislature did not intend that the discharging of a firearm into occupied property be included as an underlying felony for the purposes of the felony-murder rule. In 1977 G.S. 14-17 was revised by the General Assembly. The earlier statute had defined felony murder as a killing "committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary, *or other felony.*" (Emphasis added.) 1949 N.C. Sess. Laws Ch. 299 § 1. This vague language required judicial interpretation, which this Court provided by interpreting the "other felony" language in G.S.14-17 to refer to any felony which "creates any substantial foreseeable human risk and actually results in the loss of life." *State v. Thompson,* 280 N.C. 202, 211, 185 S.E. 2d 666, 672 (1972). The revised statute expanded the listed felonies and limited the "other felonies" which would support a charge of felony murder to those "committed or attempted with the use of a deadly weapon." 1977 N.C. Sess. Laws Ch. 406 § 1.

Where the language of a statue is clear and unambiguous, there is no room for judicial construction, and the courts must give the statute its plain meaning. *State v. McMillan,* 233 N.C. 630, 65 S.E. 2d 212 (1951). Contrary to defendant's contentions, the unambiguous language of the 1977 revision makes it clear that felonies "committed or attempted with the use of a deadly weapon" will support a conviction of first-degree murder under the felony-murder rule.

Defendant notes in his brief that England, the birthplace of the felony-murder doctrine, abolished the rule by statute in 1957. We believe this approach represents the proper response to dissatisfaction with a statutory rule of law. Our General Assembly remains free to abolish felony murder or, as the Courts did in California, to limit its effect to those other felonies not "included in fact within" or "forming an integral part of" the underlying felony. As recently as 1977, however, our legislature chose to reaffirm and clarify the offense. We do not believe it is the proper role of this Court to abolish or judicially limit a constitutionally valid statutory offense clearly defined by the legislature.

[4] Defendant contends that the court should have charged the jury that they could return a guilty verdict only if they found that defendant fired into the automobile without justification or excuse. Defendant argues that he was within his rights in attempting to detain the victims after they committed a larceny in his presence. G.S. 15A-404 provides:

> (b) When Detention Permitted. — A private person may detain another person when he has probable cause to believe that the person detained has committed in his presence:
>
> (1) A felony,
>
> (2) A breach of the peace,
>
> (3) A crime involving physical injury to another person, or
>
> (4) A crime involving theft or destruction of property.
>
> (c) Manner of Detention. — The detention must be in a reasonable manner considering the offense involved and the circumstances of the detention.

While we agree defendant had the authority to detain the victim, two facts make it impossible for this statute to justify or excuse defendant's actions in instant case.

First, the ordinary meaning of the word "detain," and the meaning we believe our legislature intended when it enacted G.S. 15A-404, is "To hold or keep in or as if in custody." *Webster's*

*Third New International Dictionary* 616 (1976). By defendant's own testimony, the victim had left the store and was exiting the parking lot when defendant fired the first shot. Once the victim was beyond defendant's control, defendant could no longer "hold or keep" him. Defendant's own statement was that he fired the shots in the hope not that he could prevent the victim from leaving with the beer, but that the victim would bring the beer back.

Second, defendant's actions, even if viewed as attempts to detain the victim, were as a matter of law unreasonable under the circumstances. *Cf.* G.S. 15A-404(c). Even had defendant been a police officer seeking to arrest the victim for the misdemeanor larceny of the two six packs of beer he would have had no authority to use a deadly weapon to effect the arrest. "[A police officer] clearly had no right to use excessive force, and the use of a pistol, which is a deadly weapon, in attempting to arrest one charged only with the commission of a misdemeanor, is excessive force." *Sossamon v. Cruse*, 133 N.C. 470, 475, 45 S.E. 757, 759 (1903). G.S. 15A-401(d) does not permit an officer to employ deadly force to arrest a misdemeanant unless he presents an imminent threat to others or is effecting an escape by use of a deadly weapon. It follows that a private citizen should not be allowed to employ deadly force to detain a fleeing misdemeanant in circumstances under which an officer of the law could not have employed similar force to effect such an arrest. Therefore, defendant was not entitled to a charge upon justification or excuse based on G.S. 15A-404.

[5] Defendant argues that his life sentence constitutes cruel and unusual punishment. We dispose of this argument on the same ground stated in *State v. Dunlap*, 298 N.C. 725, 259 S.E. 2d 893 (1979). "[I]t is the punishment fixed by the applicable statute and . . . the punishment is not disproportionate to the offense for which defendant was convicted." *Id.* at 735, 259 S.E. 2d at 899. *See also State v. Cameron*, 284 N.C. 165, 200 S.E. 2d 186 (1973) (a sentence is not cruel and unusual punishment when it is within the maximum authorized by law), *cert. denied*, 418 U.S. 905, 41 L.Ed. 2d 1153, 94 S.Ct. 3195 (1974).

[6] The defendant next assigns as error the failure of the trial judge to review in his charge the evidence presented at trial to the effect that the shots were fired "at" or "up over" the victim's

automobile rather than into it and that the force of the weapon's discharge caused the gun to recoil and jerk upwards. Defendant asserts that in order to find him guilty of first-degree felony murder, the jury had to find that he intended to shoot "into" the Volkswagen rather than "at," "up over," or "in the direction" of it.

In his charge, the trial judge noted defendant's evidence to the effect that:

[H]e took the revolver out and he fired it into the air. . . . [H]e did not intend to do anything but to stop them by scaring them, and he certainly did not intend to hit the vehicle or to hit any person . . . . [H]e further offered evidence tending to show that he did not have the experience with this high caliber gun to fire a shot with such precision, and he did not intend to fire it either into the vehicle or certainly not to hurt anyone.

We believe this charge adequately presented to the jury the essential and substantial features of defendant's contention that he did not shoot into the automobile. We note first that the evidence of the gun's recoil, which was offered to show the difficulty in firing the gun with precision, was adequately stated in the above instruction. Second, the only evidence by the State's witnesses that a shot went "up over" the Volkswagen related to the first of the three shots. The State never contended that the first shot went into the vehicle, nor did the judge charge that there was evidence that any but the second and third shots entered the vehicle. Third, as to defendant's intent, the judge charged the jury that they could find defendant guilty only if they believed from the evidence "that the defendant willfully or wantonly *and intentionally* discharged a . . . handgun *into* the . . . vehicle." (Emphasis added.) Fourth, we note that the distinction defendant attempts to draw between intentionally firing "at" the vehicle and intentionally firing "into" the vehicle is meaningless. A criminal defendant is presumed to intend the natural consequences of his act. *State v. Elliott,* 232 N.C. 377, 61 S.E. 2d 93 (1950). It is an inherently incredible proposition that defendant could have intentionally fired a shot "at" the fleeing Volkswagen without intending that the bullet go "into" the vehicle. The judge was not required to charge on such a feckless contention. Finally, we believe the trial judge was correct in instructing the jury to assign to the preposition "into" its ordinarily accepted meaning.

We have thoroughly examined the trial court's charge and find that it adequately presents the essential and substantial features of the case. These minor discrepancies now raised by defendant should have been called to the trial court's attention. Failure to do so would ordinarily constitute a waiver. *State v. Looney*, 294 N.C. 1, 240 S.E. 2d 612 (1978). We have, nonetheless, considered each of these discrepancies and find that they do not rise to the level of prejudicial error.

[7] At trial defendant's statement to the effect that he started to let the teenagers leave, but then said, "The hell with it," was admitted for impeachment purposes only. Defendant takes the position that he was prejudiced by the District Attorney's substantive use of this statement in his closing argument. Defendant made no objection to this argument at the time it was made. Neither did he request a correction in the judge's charge. At the end of the charge, the Court inquired whether counsel had any requested corrections or additions. Counsel replied in the negative. Defense counsel's only action with regard to this alleged error was to move for a mistrial at the close of the jury arguments, which motion was denied. The sole question before this Court then is whether the trial court erred in denying defendant's motion for a mistrial.

In order to place this single challenged statement in proper perspective, we quote the pertinent portion of the District Attorney's argument, to wit:

What happened after the shooting? Well, an independent witness who works as a free lance photographer for The Charlotte News testified that he walked in the store and overheard somebody say to the defendant, "Did you get them?" and heard him say, "Yes, I think so." Does that sound like a man that didn't intend to do anything, and, of course, the defendant says that he didn't know that he had hit anybody or that anything was amiss; but I submit to you, members of the jury, that that just can't be true, because all these other witnesses saw that window fragmented. They heard the engine rev up. They saw the car driving out of control, and other people ran down there to see where the Volkswagen went. There wasn't any question about that something was amiss. There wasn't any doubt, and the de-

fendant had the best view of that departing car of anybody. He had to know something was amiss, and how did he behave? Did he run down there to see? "Oh, my gosh, have I hurt somebody?" Did he go to anybody's aid? He went back inside, and he called the police, but what did he tell them? He told them about a larceny. He didn't even call an ambulance, and he didn't tell them anything about the shooting, and what else? We know conclusively from several witnesses that at a later point somebody came in there and said, "You shot one of these people. He is in bad shape," and what did the defendant do? He called somebody on the phone, according to two independent witnesses. One of them is David Hamilton, the one that Mr. Sentelle liked so much, and the other one is Ernest Lawrence. Those two witnesses heard the defendant pick up the phone and call somebody and ask for a lawyer, not an ambulance, a lawyer; and when he got down to the police station and he talked to Officer Dunn, what did he say? Told Officer Dunn, "I started to let them go, but I said, 'The hell with it.' "

Members of the jury, if those things don't tell you "intent", I don't know what does. When a person takes a firearm and points it at a vehicle and pulls the trigger, the natural and logical consequences of that act are to project a projectile into that car, and a person intends, I submit to you, the natural and logical consequences of their act.

I submit to you that, if the State hasn't proved beyond any reasonable doubt "intent" in this case with six eyewitnesses, with the defendant testifying in a manner which conflicts with the laws of nature, then I submit it can't ever be proved.

A mistrial should be declared "if there occurs during the trial . . . conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to defendant's case." G.S. 15A-1061. In light of the overwhelming evidence on the issue of intent, we fail to see how defendant could have been so substantially and irreparably prejudiced by the District Attorney's argument as to render the denial of his motion for mistrial a manifest abuse of the sound discretion of the trial court. *State v. McGuire*, 297 N.C. 69, 254 S.E. 2d 165, *cert. denied*, 444 U.S. 943, 62 L.Ed. 2d 310,

100 S.Ct. 300 (1979); *State v. Mills*, 39 N.C. App. 47, 249 S.E. 2d 446 (1978).

This assignment of error cannot be sustained.

[8] Defendant contends the trial judge erred in that he failed to submit to the jury the possible verdict of voluntary manslaughter.

Defendant was tried under an indictment drawn pursuant to to the provisions of G.S. 15-144. The trial judge, as is permitted by that statute, submitted to the jury the possible verdicts of first-degree murder on the theory of premeditation and deliberation and first-degree murder on the felony-murder theory. *State v. Thompson*, supra; *State v. Logan*, 161 N.C. 235, 76 S.E. 1 (1912). The jury returned the following verdict:

We the jury return the unanimous verdict as follows:

No. 1, Guilty of first degree murder

Answer, Guilty.

Sub(a), on the basis of malice, premeditation and deliberation

Answer, No.

Sub(b) under the first degree felony rule

Answer, Yes.

In *State v. Warren*, 292 N.C. 235, 242, 232 S.E. 2d 419, 423 (1977), this Court noted:

It is a well established rule that when the law and evidence justify the use of the felony-murder rule, then the State is not required to prove premeditation and deliberation, and neither is the court required to submit to the jury second-degree murder or manslaughter unless there is evidence to support it.

*See also State v. Miller*, 219 N.C. 514, 14 S.E. 2d 522 (1941); *State v. Logan, supra.*

The court might well have omitted any instructions concerning "premeditation and deliberation" for all the evidence discloses that defendant killed the victim "by discharging a firearm into oc-

cupied property," which is denominated a felony by G.S. 14-34.1. Obviously, a violation of this statute entails the use of a deadly weapon.

Since defendant was found guilty of murder in the first degree on the theory of felony murder and was found not guilty on the charge of first-degree murder with premeditation and deliberation, no prejudice resulted from the court's failure to charge on voluntary manslaughter.

[9] Defendant next assigns as error the admission into evidence of photographs of the victim's injuries.

Photographs, however gruesome, which fairly and accurately represent a scene observed by a witness and which can be used to illustrate his testimony may be admitted in evidence for illustrative purposes. *State v. Sledge*, 297 N.C. 227, 254 S.E. 2d 579 (1979). The photographs in instant case were properly authenticated and admitted into evidence for illustrative purposes. We find no error in their admission.

Defendant further argues that it was error to allow the victim's father to identify the photographs as depicting his son and the automobile his son was driving on the night he was killed. A plea of not guilty places at issue all of the facts alleged in the indictment. *State v. Perry*, 275 N.C. 565, 169 S.E. 2d 839 (1969). The witness's testimony was relevant to establish the identity of the victim and to identify the automobile.

[10] Defendant, in his final assignment of error, alleges that the trial court erred by failing to declare a mistrial upon learning that the jury was hopelessly deadlocked. The granting or denial of a motion for a mistrial is a matter within the sound discretion of the trial judge. *State v. McGuire, supra; State v. Mills, supra.*

G.S. 15A-1063(2) provides:

Upon a motion of a party or upon his own motion, a judge may declare a mistrial if:

* * *

(2) It appears there is no reasonable probability of the jury's agreement upon a verdict.

*See also* G.S. 15A-1235(d).

The record indicates that the jury deliberated for six hours and ten minutes. After the first hour of deliberations, the jury returned to the courtroom for additional instructions. When the jurors had failed to reach a verdict after four and a half hours, the judge brought them back into the courtroom to inquire into their numerical differences. At that time the vote stood at eight to four. The foreman gave no indication that the jury was deadlocked, and the judge asked the jury to continue deliberations. A little over an hour later the judge again called the jury back into the courtroom and learned that the vote was eleven to one at that point. The foreman informed the judge that further deliberations would result in a unanimous verdict. The jury returned to its deliberations and returned a verdict of guilty about a half hour later. We fail to see how these facts disclose any sort of deadlock. We are unable to say that the court's failure to declare a mistrial on its own motion was an abuse of discretion. *See* G.S. 15A-1063(2); *State v. McGuire, supra.* This assignment of error is without merit.

Our careful examination of the entire record discloses that defendant had a fair trial free from prejudicial error.

No error.

Justice COPELAND dissenting.

I must dissent because the majority has overlooked a critical omission in the State's case against defendant, to wit, sufficient evidence to sustain a conviction for murder in the first degree under the felony murder rule.[1] The jury would have been authorized to find defendant guilty of the *felony* murder of the driver-occupant of the vehicle *only if* the State had demonstrated beyond a reasonable doubt that defendant committed the homicide in the perpetration of another felony involving the use of a deadly weapon. *See* G.S. 14-17; *State v. Womble,* 292 N.C.

---

1. Defendant failed to raise this specific point in his brief, but he did twice move for a dismissal of the murder charge at trial and excepted to the judge's denials of his motions. However, it is plain that a legal error of this magnitude should have been corrected by the Court upon its own motion. *See* G.S. 15A-1441, -1442(3), -1446(d)(5). *See also* Rule 2, North Carolina Rules of Appellate Procedure.

455, 233 S.E. 2d 534 (1977). The State relied on defendant's violation of G.S. 14-34.1, which proscribes the discharge of a firearm into occupied property, to fulfill that requirement. [It was never disputed that defendant fired the fatal shot killing the decedent.] However, the State did not, in my opinion, adduce substantial evidence against defendant upon every essential element of the underlying felony of G.S. 14-34.1.

In pertinent part, G.S. 14-34.1 provides that "[a]ny person who willfully or wantonly discharges or attempts to discharge . . . [a] firearm into any building, structure, vehicle, aircraft, watercraft, or other conveyance, device, equipment, erection, or enclosure while it is occupied is guilty of a Class H felony." Our Court has stated that one violates this statute if he intentionally, without legal justification or excuse, discharges a firearm into what he knows, or what he should reasonably know, is an occupied structure. *State v. Williams*, 284 N.C. 67, 73, 199 S.E. 2d 409, 412 (1973). In my view, therefore, an essential element of G.S. 14-34.1 is the *specific* intent to discharge a firearm *into* something. The mere general intent to fire a weapon, standing alone, will not suffice. Indeed, common sense would surely dictate an interpretation of the statute whereby the act of discharging a firearm becomes criminally culpable as a felony only when that act is simultaneously accompanied by, and accomplished with, the distinct reckless or evil intent to shoot into or inside an occupied structure of some kind.

Moreover, in accordance with my belief that a violation of G.S. 14-34.1 requires the kind of specific intent just described, I do not believe, as does the majority, that it is "an inherently incredible proposition" that one could intentionally shoot "at" a fleeing vehicle without intending to shoot "into" it. The words "at" and "into" are not generally considered to be synonymous. *See* Roget's International Thesaurus 139-40 (4th ed. 1977); Webster's New Dictionary of Synonyms 70-71 (1968). In fact, the two words usually have fundamentally different meanings. For example, "at" indicates a presence near something, the location of something or the general direction of an action or motion. Webster's Third New International Dictionary 136 (1976); The American Heritage Dictionary of the English Language 82 (1969); March's Thesaurus and Dictionary 78 (1968). On the other hand, "into" primarily denotes a motion specifically directed at attain-

ing the position of being *in* something, or a movement to an interior location or to the inside of something. Webster, *supra*, at 1184; The American Heritage Dictionary, *supra*, at 663; March, *supra*, at 555. Thus, it is plain to me that one could actually attempt to shoot "at" something without intending to shoot "into" it, especially when that something is a *mobile object* such as an automotive conveyance capable of quick speed and sudden changes in direction, i.e., a Volkswagen fleeing the scene of a larceny.[2]

In the instant case, the State's eyewitnesses testified that defendant came out of the store (after the girl had left without paying for the beer), hollered at the occupants of the Volkswagen and then fired three shots, in rapid succession, as the vehicle continued to move away from the parking lot to the road. [These events occurred in the nighttime.] Everyone agreed that only the second, and possibly the third, shot actually struck the car. These witnesses said that defendant either fired the weapon *at, over, across* the car, held the gun *up* or aimed it *in the direction of* the car. No one could positively remember whether defendant held the pistol with one or two hands at the time of the first shot or thereafter. Yet all of the witnesses did say that, as defendant fired the shots, his hand (or hands) jumped, jerked, bobbed around or moved due to the weapon's recoil. Officer W. J. Dunn essentially corroborated their observations by stating that a .357 magnum pistol "kicked up" when fired and that its recoil would jerk the shooter's arm. He further said that such jerking was more pronounced if the shooter was inexperienced or held the gun with only one hand. This is the total sum of what the State's evidence tended to show upon the essential element of specific criminal intent under G.S. 14-34.1. To me, the evidence was patently insufficient to prove beyond a reasonable doubt that defendant *intentionally* discharged a firearm *into* an occupied vehicle.

In so saying, I am not inadvertent to the general difficulty in directly proving the existence of a criminal intent in any case, since intent is a subjective state of mind in that of the actor. For that reason, the State must often rely on the nature of the cir-

---

2. I further perceive that one could discharge a firearm at the tires of a departing vehicle, in order to detain it, without also meaning to shoot into its occupied interior compartment.

cumstances surrounding the commission of an act to infer a defendant's possession of the requisite intent. However, such circumstantial evidence upon an essential element of a crime must still meet the standard of substantiality. Here, the State's evidence of defendant's intent in firing the gun is equivocal at best. It did no more than raise a mere suspicion or conjecture about the existence of this essential element of G.S. 14-34.1, and, as a consequence, the jury was improperly allowed to speculate about the criminal nature of defendant's act of discharging the firearm. *See also State v. Hewitt,* 294 N.C. 316, 319, 239 S.E. 2d 833, 835 (1978). In short, even considering the State's evidence in its most favorable light with the benefit of all reasonable inferences, this case constitutes a "draw" on the question of intent.[3] As it was not proven beyond a reasonable doubt that defendant violated G.S. 14-34.1, it necessarily follows that this felony should not have been submitted to the jury as a basis for finding defendant guilty of murder in the first degree under G.S. 14-17.[4] I therefore vote to reverse defendant's conviction for the more grievous offense upon this ground.

Before concluding, I am compelled to mention another point in the case. The majority rejected defendant's argument that this Court should adopt the merger doctrine which would prevent a conviction for first degree felony murder where, as here, the underlying felony is a factually integral part of the homicide. *See, e.g., People v. Wesley,* 10 Cal. App. 3d 902, 89 Cal. Rptr. 377 (1970). I agree with the majority that this is a matter more wisely left to the discretion of the Legislature, the enactor of G.S. 14-17. Yet I strongly believe that implementation of some form of the merger doctrine in this State would be a sound statutory innovation and thus urge the Legislature to examine this important issue. The facts of this particular case demonstrate the need for such action.

---

3. Defendant's evidence that the homicide was an accident was equally convincing, if not more so: the pistol belonged to the owner of the store, and defendant was not familiar with it; he had not shot a firearm of any kind in twenty-five years (since his service in the United States Air Force); he fired the shots in the air to frighten the vehicle's occupants so they would stop and bring the beer back; and his armed jerked each time he fired the pistol.

4. Having said that a felony murder conviction was insupportable, I would also note that the record does not disclose an evidentiary justification for a homicide prosecution beyond the levels of manslaughter or second degree murder.

---

**State v. Wall**

---

On 14 July 1980, defendant reported for work as usual from 6 p.m. to 2 a.m. at a convenience store. [He had already completed his regular eight-hour shift at another job.] At approximately 10:30 p.m., while three other customers were waiting to pay for their beer, a teenaged girl removed some beer from the store without paying for it, despite defendant's admonishments that she should not do so. The girl got into a car which began to flee the premises. Defendant, in an attempt to retrieve the stolen property, took his employer's pistol and, for the first time in twenty-five years, discharged a firearm three times. One of the shots entered into the vehicle and killed the driver. [An autopsy later disclosed that the driver was legally intoxicated at the time.] Defendant's action was admittedly rash and ill-advised. However, it certainly was not the type of distinctly deliberate and reckless criminal act causing unexpected death which ordinarily justifies the application of the felony murder rule:

> The rationale of the doctrine is that one who commits a felony is a bad person with a bad state of mind, and he has caused a bad result, so that we should not worry too much about the fact that the fatal result he accomplished was quite different and a good deal worse than the bad result he intended.

LaFave & Scott, Handbook on Criminal Law § 71, at 560 (1972). *Compare, e.g., State v. Swift,* 290 N.C. 383, 226 S.E. 2d 652 (1976); *State v. Williams,* 284 N.C. 67, 199 S.E. 2d 409 (1973); *State v. Capps,* 134 N.C. 622, 46 S.E. 730 (1904).

In any event, it is difficult to assent to a result mandating *life* imprisonment of this man, a hardworking husband and father of five children with a good reputation in the community and no prior significant criminal record, for his action in the incident of 14 July 1980. Surely, justice would be well served by the exercise of some executive clemency in his case.

Justices HUSKINS and EXUM join in this dissent.