DAVIS, Judge.
 

 *487
 
 Quintis Travon Spruiell ("Defendant") was convicted of first-degree murder under the felony murder rule after he fired a single shot into a parked car at close range, striking and killing the victim. This case presents the issue of whether Defendant received ineffective assistance of counsel on direct appeal when his appellate counsel failed to argue that it was error to instruct the jury on felony murder based upon the underlying felony of discharging a weapon into occupied property given that Defendant only fired a single shot at a single victim. The State appeals from the trial court's order granting Defendant's motion for appropriate relief ("MAR") and vacating his convictions for first-degree murder and discharging a weapon into occupied property. Because we conclude that Defendant was not prejudiced by his counsel's failure to raise this argument, we reverse.
 

 Factual and Procedural Background
 

 On the evening of 1 November 2005, Jose Lopez drove Ricardo Sanchez to a car wash in Sanford, North Carolina where Sanchez planned to complete a drug transaction with Defendant. When they arrived and parked Lopez's Ford Explorer, Lopez remained in the driver's seat while Sanchez sat in the
 
 *804
 
 rear passenger side seat with the window rolled down.
 

 After Sanchez called Defendant over to the vehicle, Defendant and Shawn Hooker approached the Explorer from the passenger side.
 

 *488
 
 Defendant and Sanchez proceeded to argue about "money and about drugs" for several seconds. Defendant then aimed a revolver at Sanchez and fired one shot through the open rear passenger side window, striking him in the stomach. Defendant was so close to Sanchez when he fired the shot that his gun "was almost touching [Sanchez's] stomach."
 

 Lopez then started to drive away as Sanchez fired several shots at Defendant from the backseat of the moving vehicle, striking Defendant twice. Lopez drove Sanchez to a local hospital where he ultimately died from his gunshot wound.
 

 On 14 November 2005, Defendant was indicted on charges of first-degree murder, discharging a weapon into occupied property, and possession of a firearm by a felon. At trial, defense counsel objected to instructing the jury on the theory of felony murder based upon the predicate offense of discharging a weapon into occupied property, but the objection was overruled.
 

 The jury found Defendant guilty of first-degree murder based upon the felony murder rule and also convicted him of discharging a weapon into occupied property and possession of a firearm by a felon.
 
 [1]
 
 Defendant was sentenced to life imprisonment without parole for the murder conviction and to a consecutive sentence of 15 to 18 months imprisonment for the possession of a firearm by a felon conviction. His conviction for discharging a weapon into occupied property was arrested.
 

 On direct appeal to this Court, Defendant's appellate counsel asserted several arguments but did not raise the issue of whether instructing the jury on felony murder based on these facts had constituted error. On 19 May 2009, this Court issued an opinion upholding Defendant's convictions.
 
 State v. Spruiell
 
 ,
 
 197 N.C.App. 232
 
 ,
 
 676 S.E.2d 669
 
 ,
 
 2009 WL 1383399
 
 (2009) (unpublished),
 
 disc. review denied
 
 ,
 
 363 N.C. 588
 
 ,
 
 684 S.E.2d 38
 
 (2009).
 

 On 12 June 2012, Defendant filed an MAR in which he primarily argued that his appellate counsel had rendered ineffective assistance of counsel by failing to challenge on direct appeal the felony murder instruction. Specifically, Defendant argued in his MAR that-based on the specific facts of the underlying crime-the offense of discharging a weapon into occupied property could not legally constitute the predicate felony upon which to base his felony murder conviction. Defendant
 
 *489
 
 filed subsequent amendments to his MAR on 13 September 2013 and 31 October 2014.
 

 A hearing on Defendant's MAR was held before the Honorable C. Winston Gilchrist on 16 December 2013. On 2 December 2015, Judge Gilchrist issued an order (the "MAR Order") granting Defendant's motion. In the MAR Order, Judge Gilchrist made the following pertinent findings of fact:
 

 14. [Defendant's appellate counsel] did not have any strategic reason for not arguing to the Court of Appeals that the facts of Defendant's case did not support submission to the jury of first degree murder in perpetration of the felony of shooting into an occupied vehicle.
 

 15. Published precedents of the courts of North Carolina supporting reversal of Defendant's conviction for felony murder existed at the time Defendant's case was appealed, briefed and decided.
 

 16. Reasonable counsel would have known of the precedents supporting Defendant's argument that felony murder based on discharging a weapon into an occupied vehicle was not properly submitted to the jury, or would have become aware of these authorities in the course of reasonable representation of Defendant on appeal.
 

 17. Appellate counsel should have been aware of the need to challenge the trial court's submission of felony murder, given that the Defendant was not convicted of first degree murder on any theory except
 
 *805
 
 murder in perpetration of
 
 *490
 
 discharging a weapon into occupied property.
 

 After setting forth a detailed legal analysis articulating his reasoning, Judge Gilchrist made the following pertinent conclusions of law:
 

 4. Counsel on direct appeal should have argued that the trial court erred in submitting felony murder in perpetration of shooting into an occupied vehicle to the jury. In not so contending, appellate counsel's representation was not objectively reasonable.
 

 5. Had Defendant's appellate counsel raised the issue of felony murder, there is a reasonable probability that Defendant's conviction for first degree murder-which was based solely on felony murder in perpetration of discharging a weapon into occupied property-would have been reversed on direct appeal. Counsel's performance undermines confidence in the outcome of this case. The performance of appellate counsel in fact prejudiced the defendant.
 

 6. Defendant Spruiell has met his burden of proving the ineffective assistance of counsel....
 
 [2]
 

 Based upon these findings and conclusions, Judge Gilchrist vacated Defendant's convictions for first-degree murder and for discharging a weapon into occupied property and ordered that Defendant receive a new trial on these charges. On 12 January 2016, the State filed a petition for writ of
 
 certiorari
 
 seeking review of the MAR Order. We granted
 
 certiorari
 
 on 2 February 2016.
 

 Analysis
 

 In this appeal, the State argues that no legal authority exists in North Carolina that would have prohibited Defendant's felony murder conviction from being predicated on the crime of discharging a weapon into occupied property. Therefore, the State contends, the failure of Defendant's appellate counsel to raise this argument did not constitute ineffective assistance of counsel and the trial court's decision to grant his MAR was erroneous.
 

 "Our review of a trial court's ruling on a defendant's MAR is whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court."
 
 State v. Peterson
 
 ,
 
 228 N.C.App. 339
 
 , 343,
 
 744 S.E.2d 153
 
 , 157 (citation and quotation marks omitted),
 
 appeal dismissed and disc. review denied
 
 ,
 
 367 N.C. 284
 
 ,
 
 752 S.E.2d 479
 
 (2013).
 

 This Court has held that "[t]o show ineffective assistance of appellate counsel, Defendant must meet the same standard for proving ineffective assistance of trial counsel."
 
 State v. Simpson
 
 ,
 
 176 N.C.App. 719
 
 , 722,
 
 627 S.E.2d 271
 
 , 275 (citation omitted),
 
 appeal dismissed
 
 ,
 
 360 N.C. 653
 
 ,
 
 637 S.E.2d 191
 
 (2006). In order to prevail on an ineffective assistance of counsel claim, "a defendant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense."
 
 State v. Phillips
 
 ,
 
 365 N.C. 103
 
 , 118,
 
 711 S.E.2d 122
 
 , 135 (2011)
 

 *491
 
 (citation and quotation marks omitted),
 
 cert. denied
 
 ,
 
 565 U.S. 1204
 
 ,
 
 132 S.Ct. 1541
 
 ,
 
 182 L.Ed.2d 176
 
 (2012).
 

 Deficient performance may be established by showing that counsel's representation fell below an objective standard of reasonableness. Generally, to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 

 State v. Allen
 
 ,
 
 360 N.C. 297
 
 , 316,
 
 626 S.E.2d 271
 
 , 286 (internal citations and quotation marks omitted),
 
 cert. denied
 
 ,
 
 549 U.S. 867
 
 ,
 
 127 S.Ct. 164
 
 ,
 
 166 L.Ed.2d 116
 
 (2006). "To show prejudice in the context of appellate representation, a petitioner must establish a reasonable probability he would have prevailed on his appeal but for his counsel's unreasonable failure to raise an issue."
 

 *806
 

 United States v. Rangel
 
 ,
 
 781 F.3d 736
 
 , 745 (4th Cir. 2015) (citation, quotation marks, and ellipsis omitted).
 

 In the present case, we need not decide the first prong of the ineffective assistance of counsel test because our analysis of the second prong is determinative of Defendant's ineffective assistance of counsel claim.
 
 See
 

 State v. Rogers
 
 ,
 
 355 N.C. 420
 
 , 450,
 
 562 S.E.2d 859
 
 , 878 (2002) ("[I]f we can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." (citation and quotation marks omitted)). As explained in detail below, Defendant has failed to demonstrate a reasonable probability that he would have prevailed in his direct appeal had his appellate counsel argued that the offense of discharging a weapon into occupied property could not support Defendant's felony murder conviction.
 

 Ordinarily, first-degree murder requires a showing that the killing was done with premeditation and deliberation.
 
 See
 

 N.C. Gen. Stat. § 4-17
 
 (a) (2015). However,
 

 [p]remeditation and deliberation are not elements of the crime of felony murder. The prosecution need only prove that the killing took place while the accused was perpetrating or attempting to perpetrate one of the enumerated felonies. By not requiring the State to prove the elements of murder, the legislature has, in essence, established a
 
 *492
 

 per se
 
 rule of accountability for deaths occurring during the commission of felonies.
 

 State v. Bell
 
 ,
 
 338 N.C. 363
 
 , 386,
 
 450 S.E.2d 710
 
 , 723 (1994),
 
 cert. denied
 
 ,
 
 515 U.S. 1163
 
 ,
 
 115 S.Ct. 2619
 
 ,
 
 132 L.Ed.2d 861
 
 (1995). Thus, pursuant to the felony murder rule set forth in
 
 N.C. Gen. Stat. § 14-17
 
 , first-degree murder includes any killing "committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon...."
 
 N.C. Gen. Stat. § 14-17
 
 (a).
 

 The General Assembly has made it a felony to discharge a weapon into occupied property.
 
 N.C. Gen. Stat. § 14-34.1
 
 (a) (2015). A person is guilty of discharging a weapon into occupied property if "he intentionally, without legal justification or excuse, discharges a firearm into occupied property with knowledge that the property is then occupied by one or more persons or when he has reasonable grounds to believe that it is occupied."
 
 State v. Jackson
 
 ,
 
 189 N.C.App. 747
 
 , 752,
 
 659 S.E.2d 73
 
 , 77 (citation, quotation marks, and brackets omitted),
 
 appeal dismissed and disc. review denied
 
 ,
 
 362 N.C. 512
 
 ,
 
 668 S.E.2d 564
 
 (2008),
 
 cert. denied
 
 ,
 
 555 U.S. 1215
 
 ,
 
 129 S.Ct. 1532
 
 ,
 
 173 L.Ed.2d 662
 
 (2009). By its express terms, the statute encompasses shots being fired into an occupied vehicle and contains no requirement that such a vehicle be in operation at the time of the offense.
 
 See
 

 N.C. Gen. Stat. § 14-34.1
 
 (a).
 
 [3]
 

 In the MAR Order, the trial court concluded that, under the factual circumstances of Defendant's case, it was improper for the trial court to instruct the jury on felony murder. This ruling was based upon the proposition that for purposes of the felony murder rule the very same "assaultive act"-here, Defendant's act of firing his gun through an open car window into Sanchez's stomach-cannot constitute
 
 both
 
 the cause of the victim's death
 
 and
 
 the basis for the predicate felony.
 

 In order to fully assess the validity of the MAR Order, it is necessary to examine in some detail several pertinent cases from our Supreme Court and this Court. In
 
 State v. Wall
 
 ,
 
 304 N.C. 609
 
 ,
 
 286 S.E.2d 68
 
 (1982), the Supreme Court considered whether the offense of discharging a weapon into occupied property could provide the basis for a felony murder conviction. In that case, the defendant was a convenience store clerk who followed a woman out of his store after she had refused to pay for a six-pack of beer. The woman climbed into a car, and as she
 
 *493
 
 and the driver were pulling away, the defendant fired three shots at the car with his pistol. The first shot missed the vehicle while the "latter two shots appeared to strike the automobile[,]"
 
 *807
 
 with one of the bullets striking and killing the driver.
 
 Id.
 
 at 611,
 
 286 S.E.2d at 70
 
 . The defendant was convicted of first-degree murder based upon the felony murder rule-the underlying felony being the offense of discharging a weapon into occupied property.
 
 Id.
 
 at 612,
 
 286 S.E.2d at 71
 
 .
 

 On appeal, the defendant argued that the Supreme Court should adopt the "merger doctrine" articulated in
 
 People v. Ireland
 
 ,
 
 70 Cal.2d 522
 
 ,
 
 450 P.2d 580
 
 ,
 
 75 Cal.Rptr. 188
 
 ,
 
 450 P.2d 580
 
 (1969).
 
 Wall
 
 ,
 
 304 N.C. at 612
 
 ,
 
 286 S.E.2d at 71
 
 . In
 
 Ireland
 
 , the California Supreme Court held that a "felony-murder instruction may not properly be given when it is based upon a felony which is an integral part of the homicide and which the evidence produced by the prosecution shows to be an offense included
 
 in fact
 
 within the offense charged."
 
 [4]
 

 Ireland
 
 ,
 
 70 Cal.2d at 539
 
 ,
 
 75 Cal.Rptr. 188
 
 ,
 
 450 P.2d at 590
 
 .
 

 Our Supreme Court acknowledged that "[t]he felony of discharging a firearm into occupied property appears to be such an integral part of the homicide in the instant case as to bar a felony-murder conviction under the California merger doctrine."
 
 Wall
 
 ,
 
 304 N.C. at 612
 
 ,
 
 286 S.E.2d at 71
 
 (internal citation omitted). However, the Supreme Court expressly declined to adopt that doctrine, explaining that on prior occasions it had "expressly upheld convictions for first-degree felony murder based on the underlying felony of discharging a firearm into occupied property. We elect to follow our own valid precedents."
 
 Id.
 
 at 612-13,
 
 286 S.E.2d at 71
 
 (internal citations omitted).
 

 The Court further observed that the defendant's disagreement with the felony murder rule was more appropriately addressed to the General Assembly than the Judicial Branch:
 

 Our General Assembly remains free to abolish felony murder or, as the Courts did in California, to limit its effect to those other felonies not "included in fact within" or "forming an integral part of" the underlying felony.... We do not believe it is the proper role of this Court to abolish
 
 *494
 
 or judicially limit a constitutionally valid statutory offense clearly defined by the legislature.
 

 Id.
 
 at 615,
 
 286 S.E.2d at 72
 
 . Accordingly, the defendant's felony murder conviction in
 
 Wall
 
 was upheld.
 
 Id.
 
 at 622,
 
 286 S.E.2d at 76
 
 .
 

 The Supreme Court reaffirmed its rejection of the California "merger doctrine" in several subsequent cases where the offense of discharging a weapon into occupied property supplied the basis for a felony murder conviction.
 
 See
 

 State v. King
 
 ,
 
 316 N.C. 78
 
 , 81-82,
 
 340 S.E.2d 71
 
 , 74 (1986) ("Defendant argues that the 'merger doctrine' prohibits the application of the felony-murder rule whenever the predicate felony directly results in or is an integral element of the homicide.... In
 
 State v. Wall
 
 , we were asked to adopt the 'merger doctrine' but declined to do so.... The defendant has presented no argument to warrant a change in our position." (internal citation omitted));
 
 State v. Mash
 
 ,
 
 305 N.C. 285
 
 , 288,
 
 287 S.E.2d 824
 
 , 826 (1982) ("[D]efendant argues that this Court should adopt the 'merger doctrine' to bar application of the felony-murder rule to homicides committed during the perpetration of the felony of discharging a firearm into occupied property. For the reasons stated in
 
 State v. Wall
 
 , we decline to change the existing law." (internal citation omitted)).
 

 In the MAR Order, the trial court recognized that
 
 Wall
 
 had, in fact, rejected the "merger doctrine" articulated in
 
 Ireland.
 
 However, the trial court placed great reliance upon a footnote-footnote three-in the Supreme Court's later decision in
 
 State v. Jones
 
 ,
 
 353 N.C. 159
 
 ,
 
 538 S.E.2d 917
 
 (2000), construing the footnote as providing an exception to the general rule articulated in
 
 Wall.
 

 *808
 
 In
 
 Jones
 
 , the defendant crashed his vehicle into another vehicle occupied by six persons, two of whom died as a result.
 
 Id.
 
 at 161,
 
 538 S.E.2d at 921
 
 . Pursuant to the felony murder rule, the defendant was convicted of the murders of the two deceased victims based upon the predicate felony of assault with a deadly weapon inflicting serious injury that he perpetrated against the other occupants of the vehicle.
 
 Id.
 
 at 165,
 
 538 S.E.2d at 923
 
 .
 

 On appeal to the Supreme Court from a divided panel of this Court upholding his convictions, the defendant argued that the trial court had improperly permitted his first-degree murder conviction to be predicated upon an underlying felony that could be established through a showing of criminal negligence rather than actual intent.
 
 [5]
 
 The Supreme
 
 *495
 
 Court agreed with this argument and overturned the defendant's felony murder convictions.
 
 Id.
 
 at 163,
 
 538 S.E.2d at 922
 
 .
 

 While the holding in
 
 Jones
 
 is not directly relevant to the present case, the Court stated the following in a footnote:
 

 Although this Court has expressly disavowed the so-called "merger doctrine" in felony murder cases involving a felonious assault on one victim that results in the death of another victim, cases involving a single assault victim who dies of his injuries have never been similarly constrained. In such cases,
 
 the assault on the victim cannot be used as an underlying felony for purposes of the felony murder rule.
 
 Otherwise, virtually all felonious assaults on a single victim that result in his or her death would be first-degree murders via felony murder, thereby negating lesser homicide charges such as second-degree murder and manslaughter.
 

 Id.
 

 at 170 n.3,
 
 538 S.E.2d at
 
 926 n.3 (internal citation omitted and emphasis added).
 

 The MAR Order also discussed
 
 State v. Carroll
 
 ,
 
 356 N.C. 526
 
 ,
 
 573 S.E.2d 899
 
 (2002), which referenced the above-quoted footnote from
 
 Jones.
 
 In
 
 Carroll
 
 , the defendant struck the victim in the head with a machete and then proceeded to strangle her to death. The jury found the defendant guilty of felony murder based upon the underlying felony of assault with a deadly weapon inflicting serious bodily injury, which occurred when the defendant struck the victim with the machete.
 
 Id.
 
 at 534,
 
 573 S.E.2d at 905
 
 .
 

 On appeal to the Supreme Court, the defendant argued that the trial court had erred by instructing the jury on felony murder based upon the predicate felony of assault with a deadly weapon inflicting serious bodily injury, contending that footnote three in
 
 Jones
 
 stood for the proposition that "where a felonious assault culminates in or is an integral part of the homicide, the assault necessarily merges with the homicide and cannot constitute the underlying felony for a felony murder conviction."
 
 Id.
 
 at 535,
 
 573 S.E.2d at 906
 
 . The defendant then asserted that
 
 *496
 
 "he engaged in one continuous assault on the victim that culminated in her death because [his] initial act of striking the victim with a machete cannot exist separately and independently from the acts causing [the victim's] death."
 

 Id.
 

 The Supreme Court rejected this reasoning, stating as follows:
 

 Defendant has misconstrued the language of
 
 State v. Jones
 

 .
 

 Jones
 
 precluded the use of assault as the underlying felony for a felony murder conviction only when there is a single assault victim who
 
 dies as a result of the injuries incurred during the assault.
 
 The victim in defendant's case, however, did not die as a result of the assault with the machete. The blow to her head was not fatal. Rather, the cause of death was strangulation. As such, the assault was a separate offense from the murder. Accordingly, the trial court did not err in submitting a felony murder instruction to the jury because the felonious assault did not merge into the homicide.
 

 Id.
 

 (internal citation omitted).
 

 Accordingly,
 
 Jones
 
 and
 
 Carroll
 
 stand for the limited proposition that a single assault
 
 *809
 
 on one victim that leads to that person's death cannot serve as the underlying felony for purposes of the felony murder rule.
 
 [6]
 
 In the MAR Order, however, the trial court construed
 
 Jones
 
 and
 
 Carroll
 
 as standing for the far broader proposition that
 
 no
 
 offense-regardless of whether the offense is classified as an assault or as some other crime-can serve as the basis for a felony murder conviction where the crime results from a "single assaultive act" against one victim. In other words, the trial court reasoned that the term " 'assault' seems to mean
 
 any single act of assaultive conduct
 
 , regardless of the felonious label attached to it." (Emphasis added.) The trial court then explained that this logic fully applied to the act of discharging a weapon into occupied property because "the offense of discharging a weapon into occupied property, like assault, is an offense against the person, and not against property." (Citation and quotation marks omitted.) For this reason, the trial court concluded, "discharging a weapon into occupied property by firing a single shot directly at the decedent cannot support a conviction for felony murder."
 

 The trial court provided additional support for its ruling by citing to a footnote from this Court's decision in
 
 Jackson.
 
 The defendant in
 
 *497
 

 Jackson
 
 was inside a vehicle at an intersection when he fired his weapon multiple times into a nearby vehicle containing two passengers, striking both of them and killing one.
 
 Jackson
 
 ,
 
 189 N.C.App. at 749
 
 ,
 
 659 S.E.2d at 75
 
 . The defendant was convicted of felony murder, attempted first-degree murder, and discharging a weapon into occupied property. The felony murder conviction was predicated upon the offense of discharging a weapon into occupied property.
 

 Id.
 

 On appeal, we upheld the defendant's convictions and declined to apply the "merger doctrine."
 

 Under the merger doctrine, not adopted in North Carolina but adopted by some states, " 'a ... felony-murder instruction may not properly be given when it is based upon a felony which is an integral part of the homicide and which the evidence produced by the prosecution shows to be an offense included
 
 in fact
 
 within the offense charged.' "
 
 State v. Wall
 
 ,
 
 304 N.C. 609
 
 , 612,
 
 286 S.E.2d 68
 
 , 71 (1982) (quoting
 
 People v. Ireland
 
 ,
 
 70 Cal.2d 522
 
 , 539,
 
 75 Cal.Rptr. 188
 
 [
 
 450 P.2d 580
 
 ] (1969) ). "[Our Supreme] Court, however, has expressly upheld convictions for first-degree felony murder based on the underlying felony of discharging a firearm into occupied property."
 

 Id.
 

 As we are bound by our Supreme Court's decision in
 
 Wall
 
 , defendant's arguments regarding the merger doctrine are rejected.
 

 Id.
 
 at 752,
 
 659 S.E.2d at 77
 
 (footnote omitted).
 

 In a footnote, however, we stated the following:
 

 Defendant cites our Supreme Court's opinion in
 
 State v. Jones
 
 ,
 
 353 N.C. 159
 
 , 170, n. 3,
 
 538 S.E.2d 917
 
 , 926, n. 3 (2000), which stated that although the merger doctrine has been disavowed, "cases involving a single assault victim who dies of his injuries have never been similarly constrained[,]" as authority to overturn defendant's conviction in this case. The rule announced in
 
 Jones
 
 , however, only applies where there is a single assault victim.
 
 State v. Carroll
 
 ,
 
 356 N.C. 526
 
 , 535,
 
 573 S.E.2d 899
 
 , 906 (2002). There being multiple assault victims in this case, defendant's argument on this point is without merit.
 

 Id.
 

 at 752 n.3,
 
 659 S.E.2d at
 
 77 n.3.
 

 While this footnote in
 
 Jackson
 
 appears to embrace the reasoning of footnote three in
 
 Jones
 
 , Defendant reads it far too broadly. The
 
 Jackson
 

 *498
 
 footnote cannot be construed as a definitive ruling by this Court that the felony murder rule does not apply to instances in which a defendant discharges a weapon into occupied property containing only one person. To the contrary, the footnote was simply a summary rejection of a particular argument offered by the defendant on the facts of that case. This Court was not squarely faced in
 
 Jackson
 
 with the question currently before us-that is, whether the felony murder rule may be applied based upon the predicate felony of discharging a weapon
 
 *810
 
 into occupied property where there was a single shot fired at a single victim.
 
 [7]
 

 We find more instructive our recent decision in
 
 State v. Juarez
 
 , --- N.C. App. ----,
 
 777 S.E.2d 325
 
 (2015),
 
 rev'd on other grounds
 
 , --- N.C. ----,
 
 794 S.E.2d 293
 
 (2016). In
 
 Juarez
 
 , the defendant fired one bullet into a car occupied by only the victim, shattering a window and striking and killing the victim. The defendant was convicted of felony murder based upon the underlying felony of discharging a weapon into an occupied vehicle in operation pursuant to
 
 N.C. Gen. Stat. § 14-34.1
 
 (b).
 

 Id.
 

 at ----,
 
 777 S.E.2d at 328
 
 .
 

 On appeal, the defendant contended that-based on footnote three in
 
 Jones
 
 -a single assaultive act could not support a felony murder conviction even where the underlying felony was discharging a weapon into occupied property rather than assault. Citing
 
 Wall
 
 , we rejected this argument, holding that "[o]ur precedent clearly states that discharging a firearm into occupied property is a felony involving a deadly weapon, and as such supports a charge of first-degree murder based upon the felony murder theory."
 

 Id.
 

 at ----,
 
 777 S.E.2d at 330
 
 . Moreover, we explained that the offense of discharging a weapon into occupied property contained elements not present in assault crimes and thus did not fall within the "merger doctrine" for assault crimes as discussed in footnote three in
 
 Jones.
 

 Thus, unlike in
 
 Jackson
 
 , this Court in
 
 Juarez
 
 expressly considered-and rejected-a defendant's argument that the "merger doctrine" precluded a felony murder conviction based upon the underlying felony of discharging a weapon into occupied property even where there was only one act and one victim. Defendant seeks to distinguish
 
 Juarez
 
 on the ground that it involved a vehicle in operation rather than one that was stationary (as in the present case). However, as the State notes, there was no indication in
 
 Juarez
 
 that anyone other than the actual
 
 *499
 
 victim was in any danger as a result of the defendant's actions, and our analysis did not focus on the potential for harm to third parties arising from the defendant's conduct.
 

 Our recent decision in
 
 State v. Frazier
 
 , --- N.C. App. ----,
 
 790 S.E.2d 312
 
 ,
 
 disc. review denied
 
 , --- N.C. ----,
 
 794 S.E.2d 330
 
 (2016), is also instructive. In
 
 Frazier
 
 , the defendant used his hand to repeatedly strike an infant, resulting in the baby's death. An expert witness testified that the infant died from blunt force trauma from three separate applications of force. Defendant was convicted of felony murder based upon felony child abuse.
 

 Id.
 

 at ----,
 
 790 S.E.2d at 316
 
 .
 

 On appeal, the defendant argued that the offense of felony child abuse could not support a felony murder conviction because "the felony murder merger doctrine prevents conviction of first-degree murder when there is only one victim and one assault."
 

 Id.
 

 at ----,
 
 790 S.E.2d at 320
 
 . We refused to adopt this argument, holding that
 

 [f]elonious child abuse does not merge with first-degree murder because the crime of felonious child abuse requires proof of specific elements which are not required to prove first-degree murder[.] ... The crime of felonious child abuse is among those offenses that address specific types of assaultive behavior that have special attributes distinguishing the offense from other assaults that result in death. Therefore, our courts have declined to apply the "merger doctrine" in cases where the underlying felony (here, child abuse) was not an offense included within the murder.
 

 Id.
 

 (internal citation omitted).
 

 In the present case, the offense underlying Defendant's felony murder conviction likewise included attributes distinguishing it from other acts that result in death in that the State was required to prove that Defendant fired his gun into an occupied vehicle. Defendant seeks to distinguish
 
 Frazier
 
 based upon the fact that the defendant in that case struck the victim multiple times whereas there was only one "assaultive" act in the present case. That reasoning is unavailing, however, given that our holding in
 
 Frazier
 

 *811
 
 was not premised on the number of blows inflicted by the defendant.
 

 * * *
 

 Taking into account all of the relevant statutory authority and caselaw discussed above, it is clear that neither the Supreme Court nor this
 
 *500
 
 Court has ever expressly recognized an exception to the felony murder rule for the offense of discharging a weapon into occupied property. At most, North Carolina courts have recognized a very limited "merger doctrine" that precludes use of the felony murder rule in situations where the defendant has committed one
 
 assault
 
 crime against one victim and the State seeks to use that assault as the predicate felony for a felony murder conviction.
 

 In his brief, Defendant acknowledges the absence of North Carolina caselaw clearly supporting his position, noting that "[w]hile no case has yet held that discharging a weapon into occupied property merges with felony murder, neither this Court nor our Supreme Court have
 
 foreclosed
 
 the possibility." (Emphasis added.) However, this latter observation-even if true-cannot be bootstrapped into a conclusion that a reasonable probability exists Defendant would have prevailed on direct appeal had his counsel made this argument. To the contrary, a ruling in Defendant's favor on this issue in his direct appeal would have constituted a departure from North Carolina's existing jurisprudence.
 

 Accordingly, Defendant has failed to satisfy the prejudice element of his ineffective assistance of counsel claim. We therefore reverse the trial court's MAR Order.
 

 Conclusion
 

 For the reasons stated above, we reverse the trial court's 2 December 2015 order granting Defendant's MAR.
 

 REVERSED.
 

 Judges STROUD and HUNTER, JR. concur.
 

 [1]
 

 Although the jury was also instructed on the offense of first-degree murder based on premeditation and deliberation, the jury left this portion of the verdict sheet blank.
 

 [2]
 

 Judge Gilchrist concluded that the other grounds for relief asserted in Defendant's MAR lacked merit. That portion of his ruling is not presently before us.
 

 [3]
 

 If the vehicle
 
 is
 
 in operation at the time of the offense, however, the offense is raised from a Class E felony to a Class D felony.
 
 See
 

 N.C. Gen. Stat. § 14-34.1
 
 (b).
 

 [4]
 

 It is important to distinguish the "merger doctrine" discussed in
 
 Ireland
 
 and throughout this opinion from the entirely separate merger rule that requires a defendant's conviction for the predicate felony to be arrested after he is convicted of felony murder.
 
 See
 

 State v. Moore
 
 ,
 
 339 N.C. 456
 
 , 468,
 
 451 S.E.2d 232
 
 , 238 (1994) ("When a defendant is convicted of first degree murder pursuant to the felony murder rule, and a verdict of guilty is also returned on the underlying felony, this latter conviction provides no basis for an additional sentence. It merges into the murder conviction, and any judgment imposed on the underlying felony must be arrested." (citation and alteration omitted)).
 

 [5]
 

 Assault with a deadly weapon inflicting serious injury may be established through a showing of criminal negligence rather than actual intent.
 
 See
 

 id.
 
 at 164-65,
 
 538 S.E.2d at 922-23
 
 ("[A] driver who operates a motor vehicle in a manner such that it constitutes a deadly weapon, thereby proximately causing serious injury to another, may be convicted of [assault with a deadly weapon inflicting serious injury] provided there is either an actual intent to inflict injury or
 
 culpable or criminal negligence
 
 from which such intent may be implied." (emphasis added)).
 

 [6]
 

 In its briefs to this Court, the State does not dispute this interpretation of
 
 Jones
 
 and
 
 Carroll.
 

 [7]
 

 Indeed, the footnote in
 
 Jackson
 
 contains no analysis at all as to why footnote three in
 
 Jones
 
 (which dealt solely with the predicate felony of assault) should be extended to the legally distinct predicate felony of discharging a weapon into occupied property.