STATE OF NORTH CAROLINA v. TODD CHARLES BOGGESS

No. COA08-746

(Filed 17 March 2009)

**Criminal Law— defenses—automatism—felony murder—underlying kidnapping voluntary**

The trial court did not err by failing to give an instruction on the defense of automatism in a prosecution for felony murder based on kidnapping where the defendant's expert evidence was that he was in a dissociative state, precluding a voluntary act, but not until the murder. In felony murder, the underlying offense provides the voluntary act if the elements of both offenses occur in a time frame that can be perceived as a single transaction, as here. Defendant was also not entitled to an instruction that a person found not guilty based on automatism could be involuntarily committed as being mentally ill.

Appeal by defendant from judgment entered 1 June 2007 by Judge Ripley E. Rand in Superior Court, Durham County. Heard in the Court of Appeals 10 February 2009.

*Glover & Petersen, P.A., by James R. Glover, for defendant.*

*Attorney General Roy Cooper, by Assistant Attorney General William B. Crumpler, for the State.*

WYNN, Judge.

This is a second appeal for Defendant arising from the facts in this matter, which are set forth in *State v. Boggess*, 358 N.C. 676, 600 S.E.2d 453 (2004) (*Boggess I*).

The first appeal arose from his capital trial in January 1997 wherein a jury found him guilty of first-degree murder on the basis of premeditation and deliberation; felony murder, with kidnapping and robbery with a dangerous weapon serving as underlying felonies; and murder by torture. In conformance with the jury's recommendation, the trial court imposed a sentence of death as to the murder, and sentenced Defendant to a term of 60 to 92 months' imprisonment for the conviction of robbery with a dangerous weapon.

Upon review, our Supreme Court in *Boggess I* awarded Defendant a new trial based upon errors found in the jury selection process and a jury instruction pertaining to the meaning of a life sentence. *Id.*

STATE v. BOGGESS

[195 N.C. App. 770 (2009)]

This second appeal arises from his retrial wherein he was convicted of first-degree murder, solely on the theory of felony murder with kidnapping as the underlying felony; robbery with a dangerous weapon; and first-degree kidnapping. The trial court sentenced Defendant to a term of life imprisonment without parole. In this appeal, Defendant challenges only his first-degree murder conviction.

As stated in our Supreme Court's opinion in *Boggess I*, the State's evidence tended to show that Defendant and his girlfriend, Melanie Gray, were at Wrightsville Beach when they approached Danny Pence, who was interested in selling his Ford Mustang. The three rode for a test drive that resulted in the couple driving Mr. Pence to Durham.

In Durham, the couple drove Mr. Pence to a wooded area and, with his hands tied, led him to a partially constructed house with the chimney and fireplace exposed. Defendant told Mr. Pence to get into the fireplace, and unsuccessfully attempted to tie him. Thereafter, Defendant hit Mr. Pence on the head several times with a piece of floorboard and a brick, and covered Mr. Pence with pieces of sheet metal. The couple was later observed driving Mr. Pence's Mustang and pawning some items from the car. Mr. Pence's body was found in a wooded area by a group of teenage boys.

At his second trial, Defendant's main theory of defense was that he was in a dissociative state when he committed the killing in Durham. Defendant offered the expert opinion of forensic psychiatrist George Corvin, who testified that Defendant "was in a dissociative trance during the events that occurred in the woods off Terry Road" in Durham. Dr. Corvin equated automatism or unconsciousness with dissociation, describing the latter as follows:

> Dissociation as a symptom is basically the separation of normally connected mental processes, such as emotions, cognition, thinking, and also behavioral controls from full conscious awareness. . . .

> It is a temporary, can be sudden, alteration in your level of consciousness, if you will. It can last anywhere from moments to minutes to hours and, in rare situations, people can have conditions where they literally lose complete memory of what and where they've been for days even.

> During this period of time, during periods of Dissociation, an individual can engage in acts that they don't really have vol-

untary conscious control over or even full awareness of what they are doing.

Following the evidence, Defendant requested instructions on the defenses of automatism/unconsciousness, but the trial court gave the instructions only as to first-degree murder by premeditation and deliberation and by torture, ruling that the defenses did not apply to felony murder. The trial court also refused to give an instruction, which Defendant requested, stating that a person found not guilty by reason of unconsciousness is subject to involuntary commitment in a mental health facility.

In this appeal, Defendant argues that the trial court erred by refusing to instruct that the unconsciousness defense applied to the felony murder charges, and failing to instruct that he could be involuntarily committed if found not guilty by reason of unconsciousness. We disagree.

A trial court must give an instruction, at least in substance, that is a correct statement of the law and supported by substantial evidence. *State v. Napier*, 149 N.C. App. 462, 463-64, 560 S.E.2d 867, 868-69 (2002) (citation omitted). The automatism defense has been defined as:

> the state of a person who, though capable of action, is not conscious of what he is doing. It is to be equated with unconsciousness, involuntary action [and] implies that there must be some attendant disturbance of conscious awareness. Undoubtedly automatic states exist and medically they may be defined as conditions in which the patient may perform simple or complex actions in a more or less skilled or uncoordinated fashion without having full awareness of what he is doing.

*State v. Fields*, 324 N.C. 204, 208, 376 S.E.2d 740, 742 (1989) (citations omitted). The practical effect of automatism is that the "absence of consciousness not only precludes the existence of any specific mental state, but also excludes the possibility of a voluntary act without which there can be no criminal liability." *Id.* (citations omitted).

Here, Defendant argues that he was entitled to an instruction that the automatism defense applied to the felony-murder charges because Dr. Corvin's testimony established that he was in a dissociative state at the time of the killing, thus precluding the necessary "voluntary act." However, the felony-murder rule holds that a killing committed during the perpetration of a kidnapping is first-degree murder.

N.C. Gen. Stat. § 14-17 (2007). "All that is required to support convictions for a felony offense and related felony murder 'is that the elements of the underlying offense and the murder occur in a time frame that can be perceived as a single transaction.' " *State v. Trull*, 349 N.C. 428, 449, 509 S.E.2d 178, 192 (1998) (citations omitted). Thus, the underlying offense provides the voluntary act under the felony murder rule if "the elements of the underlying offense and the murder occur in a time frame that can be perceived as a single transaction." *Id.* (citations and quotation marks omitted).

Dr. Corvin expressed the following opinion regarding when, in the entire sequence of events, Defendant became dissociative:

Q: I want to try to clarify one thing. You're saying while you can't precisely say when [Defendant] went into a dissociative state, it was somewhere in the woods off Terry Road. Is that fair to say?

A: Yes, sir. Certainly, the way that I've come to that opinion is that by the time they came to the foundation or the rock walls, all of the triggers were in place and all of the stresses were at least well developed. Then the statement, of course, that he made early in those sequence of events all suggest that, by that time and during that period, he was dissociative.

Q: But prior to that, he was not in a dissociative state. I mean well prior to it. I'm not trying to trip you up with minutes—

A: I understand. There's certainly not clear indication that, say, for example, that while they were driving or while they were still at Wrightsville that he was in a dissociative state. It doesn't rule it out, but I have no reason to conclude that.

Thus, neither Dr. Corvin's testimony nor any other evidence in the record supports the theory that Defendant was in a dissociative state at Wrightsville Beach or any other point before reaching Durham. In other words, the automatism defense would not have been at play when Defendant committed the kidnapping. Because all events leading to the killing constitute "a single transaction," no additional voluntary act was required to complete the felony murder. Therefore, the evidence did not support an instruction on the automatism defense as applied to felony murder, and we reject that argument.

Because we hold that Defendant was not entitled to an instruction on the defense of automatism, we summarily reject Defendant's contention that "the trial court erred by refusing to instruct the jury that a person found not guilty based on automat-

ism or unconsciousness could be involuntarily committed to a facility for the mentally ill." The record does not show evidence to support giving such an instruction.

No error.

Judges ROBERT C. HUNTER and ERVIN concur.