BRYANT, Judge.
 

 *253
 
 Where the trial court did not err in instructing the jury on first-degree felony murder and the intent required for felonious child abuse as a predicate felony to felony murder, and where the trial court properly denied defendant's motion to dismiss based on the felony merger doctrine, we affirm the verdict of the jury and find no error in the judgment of the trial court.
 

 In November 2012, twenty-year-old defendant Brian James Frazier was living with his girlfriend, Stefany Ash, in High Point, North Carolina.
 

 *254
 
 Defendant and Ash had two children together, an eighteen-month-old boy and a thirteen-day-old baby boy named Kahn.
 
 [1]
 
 Defendant had taken time off from
 
 *315
 
 high school to help Ash with Baby Kahn, but had stayed up all night for several nights playing video games.
 

 On the afternoon of 27 November 2012, around 3:00 PM, Guilford County Emergency Medical Services ("EMS") received a 911 call to respond to what they believed was the cardiac arrest of an approximately one-month-old child. EMS, High Point Fire Department, and Officer Matthew Blackmon of the High Point Police Department all responded to the call shortly after 3:00 PM. When the responders arrived, they had to knock and wait for defendant to unlock the door and let them in.
 

 Defendant led EMS and Officer Blackmon to a room at the back of the house. They found a bruised infant, Baby Kahn, lying on its back in a bassinet. The 911 call had indicated that the baby's breathing difficulties had just occurred. However, Baby Kahn was cold to the touch, had no pulse, and rigor mortis had already set in. He was also very pale and bloated, with bruises on his chest.
 

 Upon seeing Baby Kahn's body, Officer Blackmon concluded the child's death had not just occurred, and started an investigation. He called the violent crimes supervisor, set in motion the application for a search warrant, and asked defendant to step into the kitchen in order to separate him from Stefany Ash, who was also present and appeared upset.
 

 Detectives Leonard and Meyer of the major crimes unit arrived at the house at approximately 3:30 PM. They took about five minutes to observe garbage, half-eaten food, and raw meat lying on the floor of the house, as well as a sink filled with dirty water, an open refrigerator, and a dirty or moldy high chair. Detective Meyer interviewed Ash while Detective Leonard asked defendant for background information about what occurred.
 

 Defendant stated that the night before he had been playing video games all night until about 5:00 AM. As soon as defendant laid down to go to sleep, Baby Kahn began to stir and cry, and defendant explained that at this point he snapped and lost control. Defendant said he grabbed Baby Kahn by the neck with one hand while he struck him several times with his other hand. Defendant said he hit the baby in the head, body,
 
 *255
 
 and arms. At this point in the conversation, defendant dropped his head in his hands and began to cry.
 

 Defendant was taken to the police department. There he was arrested, then taken to an interview room where he waived the
 
 Miranda
 
 warnings given by Detectives Leonard and Meyer. Defendant talked at length and in detail regarding the manner in which he had caused his son's death. On 11 February 2013, defendant was indicted on one count of first-degree murder. The case came on for jury trial at the 30 March 2015 Session of the Guilford County Superior Court, the Honorable Richard L. Doughton, Judge presiding.
 

 Defendant's interview with Detectives Leonard and Meyer was videotaped and played for the jury at trial and admitted into evidence as State's Exhibit 12. During the taped interview, defendant said he "snapped" and lost control, striking the baby in the head, body, and arms. Defendant said he was in high school, but had been staying home to take care of Baby Kahn and the other minor child while Ash healed from surgery after giving birth by C-section. Defendant told the detectives about several social workers and a doctor who regularly came to the house to help them, stating that these visits started after the first baby was born because someone had anonymously reported that the house they were living in had black mold.
 

 Defendant recounted the events of the night before, saying he had stayed up all night playing video games for the past three or four nights, and right when he went to lay down to go to sleep, the baby woke up and started fussing. Defendant said he "guessed he just couldn't take it," "snapped," and "lost control." Defendant said he was not thinking; he was so exhausted he claimed it was as if he had blacked out. Defendant stated
 
 *316
 
 that he had never lost control like this with either of the children before, he did not use drugs or alcohol, and he had never been in trouble. He also did not think he had hurt Baby Kahn because the baby seemed to be breathing normally when defendant laid back down to go to sleep.
 

 Defendant slept until about 2:00 PM the next afternoon. Ash got up first and said she was going to check on Baby Kahn and feed him. When she told defendant that Baby Kahn looked pale, defendant walked over to look at him and found the baby dead. After they discovered the baby was dead, Ash attempted to convince defendant to flee, but defendant claimed he did not want to do that, he knew he had done wrong and needed to pay for it.
 

 Dr. Lauren Scott, a forensic pathologist in the Office of the Chief Medical Examiner, testified that she performed an autopsy on Baby
 
 *256
 
 Kahn on 28 November 2012. The body had several external bruises: two bruises on the left forehead, one bruise to the side of the left eye, a small bruise on the right eyelid, a larger bruise on the central chest, a smaller bruise to the right of the center chest, and a small bruise on the left abdomen. There were also tiny hemorrhages in the lining of the eyes.
 

 The internal examination revealed bruising within the abdominal cavity underlying the bruise on the outside. There was a tear or laceration on the underside of the liver and some bleeding from that tear into the capsule that surrounds the liver and into the abdominal cavity. Inside the scalp were several small bruises on the left forehead region and a large area of bleeding from the back to the top of the head across the midline, injuries consistent with blunt force trauma. There was also bleeding between the two membranes that surround the brain and between the brain surface and inner membrane. The distribution of bleeding on the brain indicated there were at least two different applications of blunt force injury to the head.
 

 Dr. Scott's opinion as to the cause of death was blunt force trauma to the abdomen and head. Her opinion was that there were at least three instances of blunt force trauma applied to Baby Kahn-at least two separate injuries to the head and at least one, and up to three, injuries to the abdomen and chest region. Dr. Scott opined that death would likely have been instantaneous given the significant bleeding and injuries in the head.
 

 At the close of the State's evidence and at the close of all the evidence at trial, defendant moved to dismiss the charge of felony murder, based on the State's asserted failure to provide evidence of the required
 
 mens rea,
 
 and based on the felony merger doctrine. Defendant also argued that the submission of the charge of felony murder would violate the Fifth, Sixth, and Fourteenth Amendments. The trial court denied these motions to dismiss.
 

 On 8 April 2015, the jury found defendant guilty of first-degree murder. The trial court entered a sentence of life imprisonment without parole. Defendant appeals.
 

 _________________________
 

 On appeal, defendant contends that the trial court erred by (I) denying defendant's requests for certain jury instructions on premeditation and deliberation; (II) instructing the jury that defendant did not need to intend to seriously injure the child; (III) denying defendant's motion to dismiss based on the felony merger doctrine; and (IV) denying
 
 *257
 
 defendant's request to instruct the jury that a single assault on a single victim cannot serve as the predicate felony for felony murder.
 

 I
 

 Defendant first argues that the trial court erred by denying defendant's request to instruct the jury on first-degree murder based on premeditation and deliberation and on other lesser included offenses. He also argues that an instruction based on premeditation and deliberation was appropriate because the evidence of the underlying felony was in conflict. We disagree.
 

 "Assignments of error challenging the trial court's decisions regarding jury instructions are reviewed
 
 de novo
 
 by this Court."
 
 State v. Osorio,
 

 196 N.C.App. 458
 
 , 466,
 
 675 S.E.2d 144
 
 , 149 (2009) (citations omitted). "A trial court must give a requested
 
 *317
 
 instruction if it is a correct statement of the law and is supported by the evidence."
 
 State v. Haywood,
 

 144 N.C.App. 223
 
 , 234,
 
 550 S.E.2d 38
 
 , 45 (2001) (citation omitted). "[A] trial judge should not give instructions to the jury which are not supported by the evidence produced at the trial."
 
 State v. Epps,
 

 231 N.C.App. 584
 
 , 586,
 
 752 S.E.2d 733
 
 , 734 (2014) (alteration in original) (citation omitted),
 
 aff'd,
 

 368 N.C. 1
 
 ,
 
 769 S.E.2d 838
 
 (2015). Here, defendant was tried and convicted for first-degree murder based on felony murder.
 

 Felony murder is defined as "[a] murder which shall be ... committed in the perpetration or attempted perpetration of [certain named felonies] ... with the use of a deadly weapon" and is considered "murder in the first degree...." N.C. Gen.Stat. § 14-17(a) (2015). "[P]remeditation and deliberation are not elements of the crime of felony-murder."
 
 State v. Swift,
 

 290 N.C. 383
 
 , 407,
 
 226 S.E.2d 652
 
 , 669 (1976).
 

 During the charge conference, defendant requested that the jury be instructed on premeditation and deliberation with lesser offenses included, as well as on felony murder. Defendant argued that preventing the defense from arguing premeditation and deliberation "denie[d] [defendant] due process, equal protection, cruel and unusual punishment...." The trial court denied defendant's request.
 

 We hold that the trial court did not err in denying defendant's request for an instruction on premeditated first-degree murder, because there was no evidence that defendant possessed a "specific intent to kill formed after some measure of premeditation and deliberation."
 
 State v. Peterson,
 

 361 N.C. 587
 
 , 595,
 
 652 S.E.2d 216
 
 , 223 (2007) (citations omitted). "Specific intent to kill ... is ... a necessary constituent of the elements of premeditation and deliberation."
 

 *258
 

 State v. Jones,
 

 303 N.C. 500
 
 , 505,
 
 279 S.E.2d 835
 
 , 838-39 (1981) (citation omitted);
 
 see also
 

 State v. Holt,
 

 342 N.C. 395
 
 , 397-98,
 
 464 S.E.2d 672
 
 , 673 (1995) ("Premeditation and deliberation are necessary elements of first-degree murder based on premeditation and deliberation.... Premeditation means that the defendant thought out the act beforehand for some length of time, however short. Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation.").
 

 Indeed, defense counsel, in requesting the instruction, acknowledged that the evidence did not meet the sufficiency standard for first-degree murder: "I'm not suggesting [the facts are] sufficient to convict [on first-degree murder], but I think there's enough from which a juror-jury may want to address it...." Defendant's counsel argued during the charge conference that because the choking and strangling of Baby Kahn took place after defendant heard the baby making noises, this might mean defendant was not unconscious or "blacked out" and therefore there was premeditation and deliberation on the part of defendant. Notwithstanding defendant's argument, which was rejected by the trial court, all of the evidence at trial tended to show that defendant "snapped," not that his actions were premeditated. Further, the evidence showed that even when defendant was pressed by the detectives to admit he planned his actions, defendant insisted he did not plan them, that he was not thinking, and that he "just snapped."
 

 Here, there was no evidence of any specific intent to kill. Rather, the evidence consistently showed that defendant "lost control" and punched two-week-old Baby Kahn. Because there was no evidence of specific intent to kill, the existing evidence was insufficient to support an instruction on first-degree murder based on premeditation and deliberation.
 

 In addition, there was no theory that would have supported conviction of any lesser-included offense (second-degree murder, involuntary or voluntary manslaughter) of first-degree murder. Second-degree murder cannot be a lesser-included offense of first-degree murder based on felony murder alone, because malice is not an element of felony murder.
 
 State v. Golden,
 

 143 N.C.App. 426
 
 , 434-35,
 
 546 S.E.2d 163
 
 , 169 (2001) (citing
 
 *318
 

 State v. Weaver,
 

 306 N.C. 629
 
 , 635,
 
 295 S.E.2d 375
 
 , 379 (1982),
 
 overruled on other grounds,
 

 State v. Collins,
 

 334 N.C. 54
 
 ,
 
 431 S.E.2d 188
 
 (1993) ). There is also no offense of second-degree felony murder in this jurisdiction.
 
 Id.
 
 at 435,
 
 546 S.E.2d at 169
 
 (citation omitted).
 
 *259
 
 We realize defendant argued zealously at trial, and now on appeal, that the trial court should have given a first-degree murder instruction based on premeditation and deliberation, and further realize that defendant's trial counsel's only reason for pressing for the instruction was to have the option of lesser-included offenses-second-degree murder, manslaughter, etc.-presented to the jury for their consideration. However, defendant's arguments, no matter how strongly stated, do not change the law. Felony murder was the only first-degree murder theory on which the trial court could properly instruct the jury.
 

 "[W]hen the law and evidence justify the use of the felony murder rule," as it does here, "the State is not required to prove premeditation and deliberation, and neither is the [trial] [c]ourt required to submit to the jury second degree murder or manslaughter unless there is evidence to support [such lesser offenses]."
 
 See
 

 State v. Strickland,
 

 307 N.C. 274
 
 , 292,
 
 298 S.E.2d 645
 
 , 657 (1983) (citation and quotation mark omitted),
 
 overruled on other grounds,
 

 317 N.C. 193
 
 ,
 
 344 S.E.2d 775
 
 (1986). Defendant's argument that he was entitled to an instruction on premeditation and deliberation is overruled.
 

 Defendant also argues that because the underlying felony (here, child abuse) was in conflict, such conflicting evidence supports a lesser-included offense. When the State proceeds on a theory of felony murder only, the question "turns on whether the evidence of [the underlying felony] was in conflict."
 
 State v. Gwynn,
 

 362 N.C. 334
 
 , 337,
 
 661 S.E.2d 706
 
 , 707 (2008) (citation omitted). Specifically, defendant contends that because the trial court submitted the pattern jury instruction on automatism, it must have found evidence that supported the jury's possible finding of lack of
 
 mens rea
 
 required for the underlying felony.
 

 "The practical effect of automatism is that the 'absence of consciousness not only precludes the existence of any specific mental state, but also excludes the possibility of a voluntary act without which there can be no criminal liability.' "
 
 State v. Boggess,
 

 195 N.C.App. 770
 
 , 772,
 
 673 S.E.2d 791
 
 , 793 (2009) (quoting
 
 State v. Fields,
 

 324 N.C. 204
 
 , 208,
 
 376 S.E.2d 740
 
 , 742 (1989) ). "The rule in this jurisdiction is that where a person commits an act without being conscious thereof, the act is not a criminal act even though it would be a crime if it had been committed by a person who was conscious."
 
 State v. Jerrett,
 

 309 N.C. 239
 
 , 264,
 
 307 S.E.2d 339
 
 , 353 (1983) (citations omitted). "[A]utomatism ... is a complete defense to a criminal charge ... and ... the burden rests upon the defendant to establish this defense, unless it arises out of the State's own evidence...."
 
 State v. Caddell,
 

 287 N.C. 266
 
 , 290,
 
 215 S.E.2d 348
 
 , 364 (1975).
 

 *260
 
 Here, the only evidence of defendant's possible unconsciousness arose from defendant's statement to detectives where he indicated he was exhausted from playing video games and it "was if he blacked out." However, defendant's statements to detectives, along with the medical evidence of the condition of Baby Kahn's body at autopsy, was sufficient to show beyond a reasonable doubt that defendant was conscious when he hit Baby Kahn.
 

 Furthermore, a defendant's inability to explain why he did certain criminal acts does not equate to having been in a state of unconsciousness at the time he committed those acts. In other words, defendant's inability to explain
 
 why
 
 he assaulted the child did not render him unable to explain
 
 what
 
 he did to Baby Kahn.
 
 See
 

 State v. Boyd,
 

 343 N.C. 699
 
 , 714,
 
 473 S.E.2d 327
 
 , 334-35 (1996) (finding the defendant failed to support defense of automatism where he had given a detailed recollection of his actions to police on the day of the murder and only later claimed not to recall the events);
 
 State v. Fisher,
 

 336 N.C. 684
 
 , 705,
 
 445 S.E.2d 866
 
 , 877-78 (1994) (holding defendant's detailed statement the day of the murder belied his claim of unconsciousness).
 

 *319
 
 In the instant case, defendant gave a detailed confession to police, including a description of his actions-how he held the baby around the neck with one hand while punching him with the other. We think defendant's own detailed statement is sufficient evidence to prove defendant was conscious when he committed the acts charged. Even on appeal, defendant highlights only his inability to articulate a
 
 reason
 
 for the assault and not any inability to
 
 recall
 
 the events. Defendant's asserted defense of automatism does not render any element of felonious child abuse in conflict in this case. Accordingly, where defendant's proposed instruction was not supported by the evidence, defendant has shown no error. This argument is overruled.
 

 II
 

 Defendant next argues that the trial court erred by denying defendant's request to instruct the jury on the intent required for the predicate felony to felony murder. Specifically, defendant contends the trial court was required to instruct the jury that defendant must have intended to inflict serious physical injury on the child, as opposed to intentionally assaulting the child which proximately resulted in serious physical injury, and the trial court's failure to so instruct violated defendant's constitutional right to due process and to be free of cruel or unusual punishment. We disagree.
 

 *261
 
 To sustain a conviction for felonious child abuse, the State must prove that defendant is "[a] parent or any other person providing care to
 
 or
 
 supervision of a child less than 16 years of age" and that the defendant "intentionally inflict[ed] any serious physical injury upon or to the child or ... intentionally commit[ed] an assault upon the child which result[ed] in any serious physical injury to the child." N.C. Gen.Stat. § 14-318.4(a) (2015) (emphasis added). "In felonious child abuse cases, the State is not required to prove that the defendant specifically intended that the injury be serious."
 
 State v. Krider,
 

 145 N.C.App. 711
 
 , 713,
 
 550 S.E.2d 861
 
 , 862 (2001) (citations and quotation marks omitted). " 'This crime does not require the State to prove any specific intent on the part of the accused.' "
 
 State v. Perry,
 

 229 N.C.App. 304
 
 , 319,
 
 750 S.E.2d 521
 
 , 533 (2013) (quoting
 
 State v. Pierce,
 

 346 N.C. 471
 
 , 494,
 
 488 S.E.2d 576
 
 , 589 (1997) ).
 

 Felony murder where the predicate felony is felonious child abuse requires the State to prove that "the killing took place while the accused was perpetrating or attempting to perpetrate felonious child abuse with the use of a deadly weapon."
 
 Pierce,
 

 346 N.C. at 493
 
 ,
 
 488 S.E.2d at 589
 
 . "When a strong or mature person makes an attack by hands alone upon a small child, the jury may infer that the hands were used as deadly weapons."
 

 Id.
 

 Furthermore, to support a felony murder conviction based on felonious child abuse, the State does not have to show that a defendant intended for the injury to be serious; the State must only show that the defendant intended to assault the child, which resulted in serious injury.
 
 See
 

 Perry,
 

 229 N.C.App. at 319
 
 ,
 
 750 S.E.2d at 533
 
 (holding "that the record contained sufficient circumstantial evidence to support a determination that [the d]efendant used his hands as a deadly weapon" on a 14-month-old child).
 

 Indeed, in
 
 Perry,
 
 the defendant appealed his conviction for first-degree murder to this Court, arguing that " 'felony child abuse is not a viable underlying felony' sufficient to support a conviction for first degree murder under the felony murder rule[,]" while at the same time acknowledging " 'that this issue has been decided adversely [to his position] by the Court of Appeals [.]' "
 
 Id.
 
 at 322,
 
 750 S.E.2d at 534
 
 (alteration in original);
 
 see
 

 Krider,
 

 145 N.C.App. at 714
 
 , 550 S.E.2d at 863 (affirming the defendant's conviction for first-degree murder based on the felony murder rule where "defendant actually intended to commit the underlying offense (felonious child abuse) with the use of her hands as a deadly weapon").
 

 *262
 
 As defendant's argument on this point is practically identical to the defendant's argument in
 
 Perry,
 
 and because of well-established precedent that "the State is not required to prove any specific intent on the part of the accused" for the crime of felony murder based on child abuse, we overrule defendant's argument.
 

 *320
 

 III
 

 Defendant next argues that the trial court erred by denying his motion to dismiss the felony murder charge for insufficiency of the evidence because the felony murder merger doctrine prevents conviction of first-degree murder when there is only one victim and one assault. Defendant contends the trial court's failure to dismiss the felony murder charge violated his constitutional rights as he was deprived of life and liberty without due process of law. We disagree.
 

 Felony murder elevates a homicide to first-degree murder if the killing is committed in the perpetration or attempted perpetration of certain felonies or any "other felony committed or attempted with the use of a deadly weapon [.]" N.C.G.S. § 14-17(a) ;
 
 see also
 

 State v. Abraham,
 

 338 N.C. 315
 
 , 331-32,
 
 451 S.E.2d 131
 
 , 139 (1994) ("[T]he legislature clearly
 
 intended
 
 ... that felony murder included a killing committed during the commission or attempted commission of a felony 'with the use of a deadly weapon.' ") (emphasis added) (quoting
 
 State v. Wall,
 

 304 N.C. 609
 
 , 614,
 
 286 S.E.2d 68
 
 , 72 (1982) ). "Felony murder, by its definition, does not require intent to kill as an element that must be satisfied for a conviction."
 
 State v. Cagle,
 

 346 N.C. 497
 
 , 517,
 
 488 S.E.2d 535
 
 , 548 (1997) (citation and quotation marks omitted).
 

 Here, the offense of felonious child abuse, where defendant's hands were a deadly weapon, served to elevate the killing to first-degree murder under the felony murder rule. Felonious child abuse does not merge with first-degree murder because the crime of felonious child abuse requires proof of specific elements which are not required to prove first-degree murder: that the victim is a child under sixteen, and that defendant was a parent or any other person providing care to or supervision of the child. The crime of felonious child abuse is among those offenses that address specific types of assaultive behavior that have special attributes distinguishing the offense from other assaults that result in death.
 
 See, e.g.,
 

 State v. Coria,
 

 131 N.C.App. 449
 
 , 456-57,
 
 508 S.E.2d 1
 
 , 6 (1998) (holding a defendant may be convicted of and punished for assault with a deadly weapon with intent to kill and for assault with a firearm on a law enforcement officer arising out of the same shooting because each offense contains an element not present in the other). Therefore, our
 
 *263
 
 courts have declined to apply the "merger doctrine" in cases where the underlying felony (here, child abuse) was not an offense included within the murder.
 

 However, defendant's merger argument might apply to sentencing (as opposed to his motion to dismiss). "The felony murder merger doctrine provides that when a defendant is convicted of felony murder only, the underlying felony constitutes an element of first-degree murder and merges into the murder conviction" for purposes of sentencing.
 
 State v. Rush,
 

 196 N.C.App. 307
 
 , 313-14,
 
 674 S.E.2d 764
 
 , 770 (2009) (citation and quotation marks omitted). Therefore, "when the sole theory of first-degree murder is the felony murder rule, a defendant cannot be
 
 sentenced
 
 on the underlying felony in addition to the
 
 sentence
 
 for first-degree murder[.]"
 
 State v. Wilson,
 

 345 N.C. 119
 
 , 122,
 
 478 S.E.2d 507
 
 , 510 (1996) (emphasis added) (citation omitted),
 
 abrogated by
 

 State v. Millsaps,
 

 356 N.C. 556
 
 ,
 
 572 S.E.2d 767
 
 (2002).
 

 The merger doctrine does not preclude indictments for both the murder and the underlying felony, nor a guilty verdict for both; rather it requires that,
 
 if a defendant is found guilty of both felony murder and the underlying felony,
 
 the judgment on the underlying felony is arrested, and "merges" into the felony murder conviction.
 

 State v. Juarez,
 
 --- N.C.App. ----, ----,
 
 777 S.E.2d 325
 
 , 329 (2015),
 
 review allowed, writ allowed,
 

 368 N.C. 683
 
 ,
 
 781 S.E.2d 473
 
 (2016).
 

 In the instant case, there was no separate indictment and no separate verdict for the underlying offense of felony child abuse. The jury had only to decide whether defendant was guilty of first-degree murder. The verdict was guilty as to one count of first-degree murder. Defendant was sentenced accordingly. Thus, to the extent that defendant's argument is that he cannot be convicted of felony murder where the underlying
 
 *321
 
 felony is child abuse, we reaffirm our analysis in Section II and overrule defendant's argument.
 
 See
 

 Perry,
 

 229 N.C.App. at 322
 
 ,
 
 750 S.E.2d at 534
 
 (upholding felony murder based on felonious child abuse where hands used as deadly weapon);
 
 Krider,
 

 145 N.C.App. at 714
 
 , 550 S.E.2d at 863 (affirming the "defendant's conviction for first-degree murder based on the felony rule" where "the State proved beyond a reasonable doubt that the defendant actually intended to commit the underlying offense (felonious child abuse) with the use of her hands as a deadly weapon").
 

 The trial court did not
 
 sentence
 
 defendant for both first-degree murder and felonious child abuse as the underlying offense of felonious child
 
 *264
 
 abuse was an element of first-degree murder and merged with defendant's first-degree murder conviction. Accordingly, as the trial court did not err in denying defendant's motion to dismiss, and properly sentenced defendant on felony murder, defendant's argument is overruled.
 

 IV
 

 Lastly, defendant argues that the trial court erred by denying defendant's request to instruct the jury that a single assault on a single victim cannot serve as the predicate felony for felony murder. Defendant contends the trial court's denial of this request to instruct the jury that separate and distinct acts were necessary to find felony murder violated defendant's constitutional rights to a fair trial by a unanimous verdict, due process of law, and freedom from cruel and unusual punishment. We disagree.
 

 Defendant had filed a written request for a special jury instruction that a single assault on a single victim cannot serve as the predicate felony for felony murder. The trial court denied defendant's request.
 

 "[R]equested instructions need only be given in substance if correct in law and supported by the evidence."
 
 State v. McNeill,
 

 360 N.C. 231
 
 , 250,
 
 624 S.E.2d 329
 
 , 341-42 (2006) (alteration in original) (quoting
 
 State v. Morgan,
 

 359 N.C. 131
 
 , 169,
 
 604 S.E.2d 886
 
 , 909 (2004) ). The trial court's failure to give a requested instruction is reviewed
 
 de novo.
 

 Osorio,
 

 196 N.C.App. at 466
 
 ,
 
 675 S.E.2d at 149
 
 .
 

 As shown in Section III,
 
 supra,
 
 it is well-settled that felonious child abuse with a deadly weapon (here, defendant's hands) may serve as the predicate felony for felony murder.
 
 See
 

 Perry,
 

 229 N.C.App. at 322
 
 ,
 
 750 S.E.2d at
 
 534 ;
 
 Krider,
 

 145 N.C.App. at 714
 
 , 550 S.E.2d at 863 ;
 
 Pierce,
 

 346 N.C. at 493
 
 , 488 S.E.2d at 589. Accordingly, the trial court did not err by denying defendant's requested instruction as it was not a correct statement of the law. Defendant's argument is overruled.
 

 NO ERROR.
 

 Judges STEPHENS and McCULLOUGH concur.
 

 [1]
 

 The victim in this case is a deceased murder victim. Rules 3.1 and 4(e) of the Rules of Appellate Procedure therefore do not apply in this case. The surviving minor child is not named herein.